UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **GARY LANDRY (#326223)** | **CIVIL ACTION** |
| **VERSUS** | |
| **JAMES M. LeBLANC, ET AL.** | **NO. 12-0311-JJB-RLB** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 17, 2013.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GARY LANDRY (#326223)                                              CIVIL ACTION

VERSUS

JAMES M. LeBLANC, ET AL.                                           NO. 12-0311-JJB-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Motion to Dismiss of defendants Kevin Benjamin, Chadwick Darbonne and Phillip Maples, rec.doc.no. 36.  This Motion is opposed.

The pro se plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Secretary James M. LeBlanc, Warden Burl Cain, Dpty Warden Darryl Vannoy, Ass't Warden Leslie Dupont, Ass't Warden Kevin Benjamin, Col. Chadwick Darbonne, Capt. Phillip Maples and Disciplinary Appeal Officer M. Piazza, complaining that the defendants violated his constitutional rights in January, 2012, by failing to take action to protect him from harm at the hands of a co-inmate.  As a result, the plaintiff was attacked by the co-inmate on February 5, 2012, resulting in serious injuries.  The plaintiff further complains that he was thereafter charged with a wrongful disciplinary report as a result of the incident and, after a disciplinary hearing at which he was allegedly provided with inadequate procedural safeguards, was punished with a transfer to punitive segregated confinement.  Pursuant to earlier motion in this case, granted by the Court on April 5, 2013, see rec.doc.nos. 47 and 48, the plaintiff has voluntarily dismissed his claims

asserted against defendants James LeBlanc, Burl Cain, Darryl Vannoy and Leslie Dupont.[1]

Initially, the defendants seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's claims asserted against them in their official capacities.[2] In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks recovery of monetary damages against either a state or its officials acting in their official capacities because these officials are not seen to be "persons" under § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989). Specifically, in Hafer v. Melo, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. Id. at 25. Accordingly, the plaintiff's claim for monetary damages asserted against the defendants in their official capacities is subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against a state

---

1 In an Amended Complaint filed on June 26, 2012, see rec.doc.no. 6, the plaintiff named as an additional defendant M. Piazza, and the plaintiff identified this defendant as having been instrumental in denying the disciplinary appeal which the plaintiff filed relative to the claims asserted in this proceeding. Although defendant Piazza has not been served with process in this case and has not appeared in this proceeding, this Court is authorized to dismiss the plaintiff's claim asserted against this defendant, sua sponte, upon a finding that the claim is frivolous or without constitutional merit under 28 U.S.C. §§ 1915 and 1915A. As discussed in the body of this Report, the Court recommends dismissal of the plaintiff's claim asserted against defendant Piazza upon such a finding.

2 It is unclear from the allegations of the plaintiff's original Complaint as to whether he intended to name the defendants in their individual and/or their official capacities. Notwithstanding, the plaintiff has made clear in subsequent pleadings that he intended to name the defendants in both capacities, see rec.doc.no. 39, and in any event, the Court interprets the allegations of pro se litigants with liberality, see Haines v. Kerner, 404 U.S. 519 (1972). Accordingly, the Court interprets the plaintiff's Complaint as naming the defendants in both capacities.

official in his individual capacity, seeking to impose liability for actions taken by the official under color of state law, is not treated as a suit against the state. Id.

Turning to the plaintiff's claims for monetary damages asserted against the defendants in their individual capacities, the defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed "to state a claim upon which relief can be granted" under this Rule. In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and more recently, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level". Bell Atlantic Corp. v. Twombly, supra, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, supra, at 678, quoting Bell Atlantic Corp. v. Twombly, supra. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Further, "[a] document filed pro se is 'to be liberally construed' ... and 'a pro se Complaint, however inartfully pleaded, must be held to less stringent standards than

formal pleadings drafted by lawyers.'" Id. (citation omitted).  Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." Ashcroft v. Iqbal, supra, at 678 (internal quotation marks omitted).

In his Complaint, as amended, the plaintiff alleges that on January 23, 2012, he was called to the office of defendant Kevin Benjamin at the LSP main prison complex and questioned by defendants Benjamin and Darbonne about a possible prior altercation between the plaintiff and a co-inmate, Tyronne Carter.  The defendants had apparently learned of this altercation through receipt of an anonymous letter which recounted the altercation.  In response to the defendants' questions, the plaintiff acknowledged a single prior incident, several weeks previously, during which co-inmate Carter had taken a swing at the plaintiff which the plaintiff had blocked.  After this interview, the plaintiff went and found co-inmate Carter, and the two inmates walked back together to defendant Benjamin's office, where defendants Benjamin and Darbonne then also questioned co-inmate Carter.  After that interview, the defendants made a determination to transfer co-inmate Carter to another dormitory within the main prison complex.  Approximately two weeks later, on the morning of February 5, 2012, the plaintiff allegedly reported to the Interfaith Chapel at LSP to prepare for the morning church service and was granted access to the chapel by defendant Phillip Maples.  According to the plaintiff, co-inmate Carter was also in the Chapel at that time, notwithstanding that the plaintiff had allegedly removed co-inmate Carter's name from the call-out list for the month of February.  As the plaintiff prepared for the upcoming service, co-inmate Carter reportedly observed a rat in the church office and procured a broom and began searching for the rat.  When the plaintiff thereafter entered the church office to get something needed for the service, co-inmate Carter

allegedly shut the door to the office and attacked the plaintiff with a weapon, causing serious injury. The plaintiff asserts that, in light of the prior altercation between the plaintiff and co-inmate Carter, defendants Benjamin and Darbonne should have placed co-inmate Carter on the plaintiff's "enemy list" and should have barred co-inmate Carter from any access to the plaintiff. In addition, defendant Maples should not have allowed co-inmate Carter into the prison chapel because of the alleged removal of the co-inmate's name from the call-out list. The plaintiff asserts that the actions of the defendants in failing to protect him from harm amounted to deliberate indifference to his health and safety in violation of the Eighth Amendment. Finally, the plaintiff also complains that he was thereafter wrongly charged with a violation of prison rules for engaging in an "aggravated fight" with co-inmate Carter and was ultimately punished, without appropriate procedural safeguards, with a transfer to punitive segregated confinement at Camp J at LSP.

In response to the plaintiff's allegations, the defendants assert that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendants contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rise to the level of a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. Huff v. Crites, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in Saucier v. Katz, 533 U.S. 194, 201 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. Second, the district court looks to whether the rights allegedly violated were clearly established. Id. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as

a broad, general proposition.  Id.  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.  Id. at 202.[3]

Undertaking the Saucier analysis, the Court concludes that the defendants' motion should be granted.  In this regard, the plaintiff's allegations principally implicate his right under the Eighth Amendment to be free from cruel and unusual punishment in the form of exposure to an unreasonable risk of harm or violence at the hands of other inmates.  Hill v. Thomas, 326 Fed. Appx. 736 (5th Cir. 2009); Oliver v. Collins, 914 F.2d 56 (5th Cir. 1990); Johnson v. Lucas, 786 F.2d 1254 (5th Cir. 1986).  Not every prison fight is actionable, however, and courts have recognized that liability may be found to exist in connection with this cause of action only where there exists on the part of a defendant security officer an intent to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm. Johnston v. Lucas, supra.  "Deliberate indifference" is the appropriate standard to be applied in this context, and this term has been defined as including an element of "subjective recklessness" as used in the criminal law.  Farmer v. Brennan, 511 U.S. 825, 839-40 (1994).  Specifically, the official must have both been aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and he must also have drawn the inference.  Id. at 837.  In appropriate circumstances, deliberate indifference may be inferred from the obviousness of the substantial risk.  Id. at 842.

Applying this standard to the plaintiff's allegations, the Court concludes that the

---

3  The United States Supreme Court has held that rigid chronological adherence to the Saucier two-step methodology is no longer mandatory.  Pearson v. Callahan, 555 U.S. 223, 235 (2009).  Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

plaintiff's allegations fail to overcome the defendants' assertion of qualified immunity. Although the plaintiff asserts that defendants Benjamin and Darbonne, after being advised of the prior confrontation between the plaintiff and the offending co-inmate, should have placed the co-inmate on the plaintiff's enemy list and transferred the co-inmate to a location more distant from the plaintiff, this assertion is based entirely on the clarity provided by hindsight and on the mere fact that the subsequent confrontation in fact occurred.  While it is true that the subsequent attack likely would not have taken place if the defendants had acted as the plaintiff now asserts, this does not establish deliberate indifference on the part of the defendants.  To the contrary, the defendants were only made aware, by anonymous letter, of a relatively minor altercation between the plaintiff and co-inmate, which altercation had occurred several weeks previously, had not been repeated since that time, had not caused any injury or disruption in the operation of the prison, and had not been reported by either inmate at the time.  The defendants then interviewed the plaintiff on January 23, 2012, who confirmed that the altercation had occurred.[4] After the interview, the plaintiff went and located the co-inmate, and the two inmates walked together back to the defendants' office without incident and without any apparent animosity. After further discussion, defendants Benjamin and Darbonne then concluded that the best way to handle the issue was to separate the two inmates by re-assigning the co-inmate to a different housing unit.  The plaintiff does not allege that he disagreed with this determination, that he requested to be protected from the co-inmate, that he advised the defendants of any anticipated future harm or injury, that he requested that the co-inmate's name be placed on his enemy list, or

---

4 Whereas the plaintiff alleges that he advised the defendants that an attempted physical altercation had taken place between himself and the co-inmate, i.e., a swing and miss, the defendants assert that they were told only of a verbal dispute between the two inmates.  The Court does not find this distinction to be significant in this case.

that he advised the defendants that he feared for his safety at the hands of the co-inmate or could not live safely in the same area as the co-inmate. Further, the plaintiff does not allege that there was any additional conflict between the two inmates – of which the defendants were aware or should have been aware – during the ensuing two weeks prior to the ultimate confrontation on February 5, 2012.[5] Thus, the basis for the plaintiff's claim in this case is simply that, in retrospect, he disagrees with the defendants' decision not to more aggressively separate the two inmates. This contention, however, sounds more in the nature of a claim of mere negligence on the part of the defendants, and mere negligence in failing to prevent an attack upon an inmate is not actionable under § 1983. Hill v. Thomas, supra; Oliver v. Collins, supra. The plaintiff's allegations, therefore, do not equate to a claim that the defendants intended to cause him harm or were consciously or callously indifferent to the possibility of such harm.

The same analysis holds true, to an even greater degree, with respect to the plaintiff's claim asserted against defendant Phillip Maples. All that the plaintiff alleges relative to this defendant is that, on the morning of February 5, 2012, the defendant allowed both the plaintiff and co-inmate Carter into the interfaith chapel at LSP. The plaintiff does not allege that the two inmates were on each other's enemy lists, that the plaintiff provided any prior notification to the defendant regarding a possible impending altercation, or that the defendant had any reason to anticipate such resulting confrontation. All that the plaintiff alleges is that, because the plaintiff had allegedly removed the co-inmate's name from the call-out list for the interfaith chapel, the

---

5  In a proposed supplemental pleading, see rec.doc.no. 18, the plaintiff alleged that several days prior to the attack of February 5, 2012, he learned that co-inmate Carter was engaging in unusual or suspicious behavior which, in retrospect, may be seen to have pointed towards the impending attack. The plaintiff does not allege, however, that any defendant was advised of this behavior or was otherwise aware of such behavior so as to warrant a conclusion that any defendant ignored a perceived risk of danger to the plaintiff's safety or well-being.

defendant should not have allowed the co-inmate to gain access to the chapel.  Again, however, in the absence of any suggestion that defendant Maples had prior notice of a danger presented by the proximity of the two inmates, this mere alleged error on the part of defendant Maples in allowing the two inmates to gain access to the chapel is a claim of mere negligence which is not sufficient to state a claim of deliberate indifference to the plaintiff's safety.

Finally, the plaintiff complains that he was wrongly charged with a disciplinary report after the altercation of February 5, 2012, and was ultimately found guilty and sentenced to punitive segregated confinement at Camp J at LSP.  He asserts that the co-inmate was in fact the sole aggressor and that the finding of guilt was therefore insupportable.  He further asserts that he was denied procedural due process at the disciplinary board hearing, specifically because an adequate investigation was not conducted, his motions at the hearing were denied, he was not allowed to confront the witnesses against him, the finding of guilt was based upon false statements made by unidentified confidential informants, his sentence of a transfer to segregated confinement was excessive, and the inmate counsel who assisted him at the hearing was ineffective.

These contentions fail to rise to the level of constitutional violations.  Under § 1983, an allegation that an inmate plaintiff has been reported or punished for conduct which he did not commit or of which he is innocent do not, without more, state a claim of the denial of due process.  Harris v. Smith, 482 Fed. Appx. 929 (5th Cir. 2012), citing Collins v. King, 743 F.2d 248 (5th Cir. 1984).  Further, the United States Supreme Court has concluded that prison disciplinary proceedings do not implicate any constitutionally protected liberty interest unless the resulting punishment subjects an inmate to an atypical and significant deprivation (evaluated in the context of prison life) in which the State might conceivably have created a liberty interest

for the benefit of the inmate.  Sandin v. Conner, 515 U.S. 472, 486 (1995).  In Sandin, the Supreme Court concluded that a disciplinary sentence of placement in segregated confinement failed to rise to the level of a constitutional claim.  In the instant case, this Court similarly concludes that the plaintiff's disciplinary sentence, a transfer to segregated confinement at Camp J at LSP, did not result in an atypical and significant deprivation within the context of prison life.  See Dickerson v. Cain, 241 Fed. Appx. 193 (5th Cir. 2007) (finding that placement in Camp J at LSP does not present "an atypical or significant hardship" within the meaning of Sandin v. Connor so as to afford an inmate a right to procedural due process in connection with disciplinary proceedings).  Accordingly, the plaintiff was not constitutionally entitled to any particular due process protections in connection with his disciplinary hearing, and this claim does not rise to the level of a constitutional violation.  Similarly, his claim that the subsequent disciplinary appeal was wrongly denied by defendant M. Piazza is without merit for the same reason.[6]  Pursuant to Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005), the law is clear that an inmate has no protected liberty interest in the proceedings attendant to administrative claims or appeals and is not entitled to a full investigation thereof or to a favorable or fair resolution in connection therewith.  Accordingly, the plaintiff fails to state a claim upon which relief may be granted as to defendant Piazza, and this defendant is entitled to dismissal as a matter of law.

---

6  Although defendant Piazza has not been served with process and has not appeared in this proceeding, this Court is authorized, pursuant to 28 U.S.C. §§ 1915(e) and 1915A, to dismiss a claim brought by a prisoner against a state official if satisfied that the claim is frivolous, malicious or fails to state a claim upon which relief may be granted.  A claim is properly dismissed as frivolous if it lacks an arguable basis either in fact or in law, as when it is "clearly baseless" or based on an indisputably meritless legal theory.  Denton v. Hernandez, 504 U.S. 25, 33 (1992), citing Neitzke v. Williams, 490 U.S. 319 (1989).  See also Davis v. Scott, 157 F.3d 1003 (5th Cir. 1998); Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995).  A § 1915 dismissal may be made at any time, before or after service of process and before or after an answer is filed.  See Brewster v. Dretke, 587 F.3d 764 (5th Cir. 2009), cert. denied, __ U.S. __, 130 S.Ct. 3368 (2010).

The plaintiff also seeks to invoke the supplemental jurisdiction of this court over potential state law claims. A district court, however, may decline to exercise supplemental jurisdiction if the state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended that the plaintiff's federal claims be dismissed, the Court recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims and that the plaintiff's claims asserted against defendant M. Piazza be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915 and 1915A. It is further recommended that the Motion to Dismiss of the remaining defendants, rec.doc.no. 36, be granted, dismissing the plaintiff's claims, with prejudice, for failure to state a claim upon which relief may be granted, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on June 17, 2013.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE**